UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GUADALUPE P. PADILLA,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 06-154-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 14, 2006, seeking review of the Commissioner's denial of her applications for Supplemental Security Income payments and Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 8, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 10, 2007, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on February 17, 1953. [Administrative Record ("AR") at 89.] She has a sixth grade education from Mexico[1] and past work experience as a hospital room cleaner and ironer. [AR at 16, 101, 155, 231-33, 680.]

On March 2, 2004, plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she had been unable to work since March 16, 2000, due to arthritis in her mid-back and neck line, hypertension and diabetes. [AR at 16, 89-91, 100, 149, 671-73, 682.] After a denial of her applications at the initial level and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on March 25, 2005, at which time plaintiff appeared with counsel and testified, with an interpreter, on her own behalf. [AR at 676-90.] On May 17, 2005, the ALJ determined that plaintiff was not disabled. [AR at 15-20.] When the Appeals Council denied review on January 21, 2006, the ALJ's decision became the final decision of the Commissioner. [AR at 7-10.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

---

[1] Plaintiff testified that she completed the fifth grade. [AR at 680.]

as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

# IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ commented that plaintiff asserted that she had not engaged in any substantial gainful activity since the alleged onset date of the disability, and the ALJ did not find otherwise.[2] [AR at 16.] At step two, the ALJ concluded that plaintiff has a "severe" impairment from degenerative changes in the musculoskeletal system, non-insulin dependent diabetes mellitus, an old left ankle fracture, and an old cerebral vascular accident.[3] [Id.] At step three, the ALJ determined that plaintiff's impairment does not meet or equal any impairment in the Listing. [Id.] The ALJ further opined that plaintiff retained the residual functional capacity ("RFC")[4] to perform medium work.[5] [AR at 19.] At step four, the ALJ concluded that plaintiff was capable of performing her past relevant work. [AR at 19.] Accordingly, the ALJ determined that plaintiff was not disabled. [AR at 15-20.]

---

[2] The ALJ also determined that plaintiff met the nondisability requirements for a period of disability and Disability Insurance Benefits, and remained insured through the date of the ALJ's decision. [AR at 15, 16.]

[3] The ALJ did not find a severe mental impairment. [AR at 18.] Plaintiff does not dispute this finding in the Joint Stipulation.

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[5] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in: (1) his failure to consider the lay witness evidence; (2) not considering the side effects from plaintiff's medications; and (3) not obtaining vocational expert testimony. Joint Stipulation ("Joint Stip.") at 3. The Court agrees that the ALJ failed to properly consider the lay witness evidence, and remands the matter for further proceedings.

**A.     FAILURE TO CONSIDER LAY WITNESS EVIDENCE**

Plaintiff contends that the ALJ erred in not discussing the evidence provided in a third-party questionnaire submitted by plaintiff's daughter, Elena Padilla, on May 20, 2002. Joint Stip. at 3-5, 7-8. In the questionnaire, Ms. Padilla wrote that plaintiff generally spends a typical day "laying [sic] around the house in pain always saying that her back and neck hurt[...]." Plaintiff tries to do some cooking, ironing, laundry, grocery shopping and bill-paying, but is unable to complete chores because of the pain, and leaves things "half way finished." Plaintiff's medication makes her drowsy, and prevents her from continuing what she was doing. She makes mistakes with her checking account, and cannot remember some of the television shows that she watches. She has trouble concentrating, and her memory is bad. [AR at 175-80.] The ALJ did not mention or refer to Ms. Padilla's statements in his decision.

As stated in 20 C.F.R. §§ 404.1513(d) and 416.913(d), judges may, "in addition to evidence from the acceptable medical sources . . . also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d) (2005). Such other sources include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Thus, lay witness testimony by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("[a]n eyewitness can often tell whether someone is suffering or merely malingering.... [T]his is particularly true of witnesses who view the claimant on a daily

basis..."). An ALJ's consideration of lay testimony becomes especially important when a plaintiff alleges "that pain is a significant factor of his alleged inability to work and the allegation is not supported by objective medical evidence in the file." SSR[6] 88-13; see Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919. Failure to consider lay testimony will be considered harmless error only if "it [is] clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

      Here, the Court cannot conclude that the ALJ's total failure to consider the evidence from plaintiff's daughter is inconsequential. See Robbins, 466 F.3d at 885 (noting the Ninth Circuit's conclusion in Stout that the Court "had never found harmless" an ALJ's silent disregard of lay witness testimony concerning the impact of an impairment on a claimant's ability to work). First, it cannot be given as an after-the-fact rationale that the ALJ's reasons for rejecting plaintiff's credibility would equally apply to Ms. Padilla's statements. The ALJ rejected plaintiff's subjective complaints as not credible, and plaintiff does not challenge this portion of the decision. The reasons provided to reject her credibility, however -- plaintiff used an interpreter despite being in the United States for over 30 years, has children in school, and took English classes and her naturalization tests in English; there is no notation that plaintiff used an interpreter during her physical examinations; she has an unrestricted driver's license despite complaints of, among other things, dizziness and poor vision; she asserted she naps because of medication, but there is no documentation of side effects from her medication; she is able to do "some work" around the house; her self-described limitations are "completely rebutted" by the opinions of her consultative examiners and state agency physicians [AR at 18] -- are largely specific to plaintiff herself. Most

---

    [6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

of these reasons are not germane to, and could <u>not</u> be used to also reject the statements of, plaintiff's daughter.

Next, Ms. Padilla's comments concerning plaintiff's activities do not necessarily equate with an ability to carry out the duties of an individual in the work force. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th Cir. 1989) (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace"). Indeed, defendant concedes that plaintiff's activities "may or may not be consistent with actual work activities." Joint Stip. at 7. Rather, whether plaintiff is unable to complete tasks and concentrate -- as asserted by plaintiff's daughter -- is a determination that the ALJ must make based on his consideration of all of the evidence.

The decision in <u>Tidwell v. Apfel</u>, 161 F.3d 599 (9th Cir. 1998), and <u>Ukolov v. Barnhart</u>, 420 F.3d 1002 (9th Cir. 2005), both relied on by defendant, do not support a different conclusion. In <u>Tidwell</u>, the ALJ gave "careful consideration" to the testimony of the plaintiff's daughter, and her observations did not establish that the plaintiff was limited in any matter. <u>Id.</u> at 602. In <u>Ukolov</u>, the ALJ concluded that the plaintiff did not have an impairment at step two of the five-step process. As such, without "a finding of impairment, a diagnosis, or objective test results," the ALJ's failure to adequately address the testimony of the lay witness concerning symptoms did not affect the outcome of the case, as symptoms alone cannot establish disability. Here, on the other hand, the ALJ gave absolutely <u>no</u> consideration to the statements of plaintiff's daughter, let alone "careful consideration," despite the fact that those statements would show that plaintiff is limited in her activities; and the statements concerning plaintiff's symptoms are appropriately considered where the ALJ has already found the existence of a severe impairment. See <u>Sprague</u>, 812 F.2d at 1231-32 (lay witness testimony by family members who have the opportunity to "observe" a plaintiff is qualified evidence that must be considered). Remand is warranted to allow the ALJ to consider whether the statements of plaintiff's daughter, if credible, would alter plaintiff's residual functional capacity, and thus her ability to perform her past relevant work.[7]

---

[7] As the ALJ's consideration of this issue on remand may impact on the need for vocational expert testimony, the Court will not consider plaintiff's third issue at this time.

**B.    SIDE EFFECTS OF MEDICATION**

Plaintiff also asserts that the ALJ did not properly address the side effects from her medications. Joint Stip. at 8-10, 12. The only evidence in the record cited by plaintiff, however, either does not link her condition (e.g., dizziness) to her medications; predates her alleged onset date; does not appear in any treatment notes or physician's reports; or is from plaintiff's daughter. The ALJ's statement that "there is no adverse medication side affects [sic] documented anywhere in the record" [AR at 18] is an accurate account, especially as this statement is part of the ALJ's rejection of plaintiff's credibility, which plaintiff does not challenge. See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (an ALJ is not required to credit testimony regarding side effects of medication in the absence of clinical evidence substantiating the side effects). Moreover, even accepting plaintiff's argument that the medications make her dizzy or tired does not mean that she is debilitated or significantly impaired by the side effects of her medication. See Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work. When the ALJ asked Mr. Osenbrock to specify the most significant side effect from all the medications he took, Mr. Osenbrock stated "dozing off" and "dry mouth.""). The ALJ's conclusion is supported by the record, and remand on this issue is not warranted.[8]

/
/
/
/
/
/
/
/

---

[8] In considering plaintiff's daughter's statements on remand, however, the ALJ should consider as well her statements concerning plaintiff's side effects from medication.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179 (9th Cir.), <u>cert. denied</u>, 531 U.S. 1038 (2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to allow for the consideration of plaintiff's daughter's statements. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: February 1, 2007

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE